U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 5 2017

CLERK, U.S. DISTRICT COURT
By_____
                Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JESSICA CASTILLO, Individually, §
and as Next Friend of Ricky      §
 Bronx Brumley, ET AL.,          §
                                 §
        Plaintiffs,              §
                                 §
VS.                              §   NO. 4:17-CV-040-A
                                 §
CITY OF FORT WORTH, TEXAS,       §
ET AL.,                          §
                                 §
        Defendants.              §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Officer
Christopher Jones ("Jones") for summary judgment. The court,
having considered the motion, the response of plaintiffs, Jessica
Castillo ("Castillo"), individually and as next friend of Ricky
Bronx Brumley ("Ricky"); Tiffany Meza ("Meza"), individually and
as next friend of Damien Brumley ("Damien"), Adrian Brumley
("Adrian"), and Jason Brumley ("Jason"); and Sonia Perez
("Perez"), as next friend of Sarah Perez ("Sarah"), the record,
the summary judgment evidence, and applicable authorities, finds
that the motion should be granted. In addition, the court finds
that judgment should be rendered in favor of defendant City of
Fort Worth.

I.

## Plaintiffs' Claims

Plaintiffs' operative pleading is their second amended complaint filed July 7, 2017. Doc.[1] 27. In it, they allege:

Castillo is the mother of Daniel Jon Brumley, Jr. ("Brumley") and the legal guardian of Brumley's minor son Ricky. Meza is the widow of Brumley and mother of Damien, Adrian, and Jason, minor children of Brumley. Perez is the mother of Sarah, another minor child of Brumley.

Just after 4:00 a.m. on January 17, 2015, Brumley was pulled over for a traffic stop by Jones, a member of the Fort Worth Police Department. Jones was driving a K-9 unit, meaning that the back seat of the car was occupied by a police dog and cage. Jones spoke with Brumley, then returned to his police car to check on warrants for Brumley, a process that took more than five minutes. Brumley had an outstanding warrant and Jones decided to take him into custody before backup transport had arrived. Jones ordered Brumley out of his vehicle and escorted him to the rear of the police car. At some point a struggle ensued.[2] Jones shot Brumley twice in the back, then fired two additional shots, including one to the top of the head, which resulted in Brumley's death. Jones

---

[1]The "Doc. __" reference is to the number of the item on the docket in this action.

[2]Plaintiffs admit that it is unknown who instigated the struggle. Doc. 27 at 6, ¶ 15.

subsequently claimed that Brumley had a knife and had attempted to stab him.

Plaintiffs sue Jones under 42 U.S.C. § 1983 for use of excessive force against Brumley. They sue City of Fort Worth for failure to train and for having a custom and policy of use of excessive force by its police department.

## II.

### Ground of the Motion

Jones maintains that he is entitled to qualified immunity.

## III.

### Applicable Legal Principles

A.   Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).   The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." _Id._ at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. _Id._ at 324; _see also_ Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 587, 597 (1986). In _Mississippi Prot. & Advocacy Sys., Inc. v. Cotten,_ the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[3] _Celotex Corp.,_ 477 U.S. at 323. If the record taken as a

---

[3]In _Boeing Co. v. Shipman,_ 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B.  Excessive Force

The elements of an excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007). A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003).

The reasonableness of use of force is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Mace, 333 F.3d at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). That the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better is not a factor in the constitutional analysis. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City &

---

[3](...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity).

C.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at

the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> Malley, [475 U.S.] at 343. . . .  This accommodation for
> reasonable error exists because "officials should not err
> always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, the failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

## Analysis

A.  The Summary Judgment Evidence

The summary judgment evidence establishes the following:

Early on January 17, 2015, Jones stopped a vehicle driven by Brumley after he observed Brumley commit traffic violations. Doc. 37 at 1. Jones went to Brumley's vehicle on the driver's side, identified himself, and told Brumley the reason for the stop. Id. Jones observed blood on Brumley's fingers. Id. at 2. Jones took Brumley's driver's license and returned to his patrol car. He learned that Brumley had several class C misdemeanor warrants and a capias warrant.[4] He learned that Brumley had been involved in incidents with Fort Worth Police including narcotics violations, assault/family violence, and evading arrest. Jones confirmed that the capias warrant for Brumley was valid and called dispatch to ask for assistance because he was driving a K-9 unit and could not transport Brumley. Jones saw that his assist unit was 2-3 minutes away and decided to remove Brumley from his vehicle, not knowing whether Brumley had access to weapons in the vehicle. Id.

Jones approached Brumley a second time and asked him to exit the vehicle. Brumley did so and immediately started to walk

---

[4]When Jones learned of the capias warrant, he had no choice but to arrest Brumley. Doc. 37 at 98.

quickly towards the back of his car. Brumley's hands were hidden in his sweatshirt sleeves. Jones inquired about the dried blood on Brumley's hands to get Brumley to stop walking, as it appeared that Brumley was trying to walk away from Jones. Id. Brumley mumbled a response about wrestling with a friend. Id. at 3. Jones gave verbal commands to stop that Brumley disobeyed. Id. at 3, 107. Jones tried to put Brumley in an escort hold,[5] then decided to place handcuffs on him. Id. at 3. As he began to place the handcuff on Brumley's left wrist, Brumley spun around and struck Jones on his left side multiple times.[6] Jones attempted knee strikes to Brumley's leg, but realized that Brumley was armed with a knife in his right hand. Jones ordered Brumley to drop the knife, but he did not. Jones told Brumley he would shoot if Brumley did not drop the knife. Jones fired his weapon twice. Id. Brumley fell to the ground and so did Jones, who was holding the handcuff attached to Brumley's arm. Brumley still had the knife and Jones believed Brumley to pose a serious threat to him. Jones attempted to stand up and get away when Brumley lurched forward and stabbed Jones twice in the left thigh. Jones fired twice more. Id. at 4. Jones noticed that the knife was stuck in his

---

[5]An escort hold is a control tactic whereby the officer grabs a wrist or forearm to escort the subject to the place the officer wants the subject to go. Doc. 37 at 108.

[6]An officer who photographed Jones's injuries noted that there was redness on the left side of his rib cage area and there were cuts and tears in his uniform shirt. Doc. 37 at 6-13.

leg; he pulled the knife out and collapsed to the ground. Id. at 130. Officers recovered a knife measuring more than six inches in length at the scene. Id. at 18-21, 28.

Jones called for help and the first officer on the scene observed that Jones had been stabbed in his left leg. Id. at 30-31. The officer applied a tourniquet. Id. at 31. Jones appeared disoriented and in a lot of pain, appearing to be going into shock. Id. at 32. En route to the hospital, Jones lapsed between unconsciousness and acting like he was still engaged in a struggle, calling out "drop the knife" several times. Id. at 27.

Cheri Anguiano ("Anguiano") lives in a house diagonally across from the scene of the incident. Doc. 38 at 163, 291. She watched from her door as events unfolded. Id. at 174. She grabbed her grandson's phone to record the scene. Id. at 188, 230. The video Anguiano took from the door of her home does not clearly reflect anything that transpired.[7] Id. at 295.

As part of his investigation, Sergeant N.E. Harris conducted a telephone interview of Anguiano. Id. at 22. During that interview, Anguiano made it clear that after hearing the first shot fired, she went into shock, walking away from the door where she had been watching the proceedings to check on her

---

[7]Anguiano did not tell police or the district attorney that she had the video. Instead, she later turned it over to plaintiffs' attorneys. Doc. 37 at 245-48.

grandchildren. She did not see anything after the first shot; that is why she said she did not see a fight. Doc. 38 at 294. She heard three more shots and called 911. Id.

B.    Jones is Entitled to Qualified Immunity

Here, plaintiffs rely on little more than mere allegations in their attempt to overcome Jones's plea of qualified immunity. Their response to the motion is to question the facts established by the summary judgment evidence rather than raise genuine fact issues. For example, they cite to text messages between Brumley and a woman he had slept with prior to being pulled over to explain why he had blood on his hand. Doc. 5 at 4-5. The exchange is irrelevant to the issue of qualified immunity. Further, they question whether Jones followed proper police procedures, when it is clear that the officer's actions leading up to the use of force do not factor into the qualified immunity analysis. Young, 775 F.2d at 1352-53. They argue that Anguiano did not see Brumley swing at Jones, but the evidence establishes that it was dark and difficult to see and Anguiano went into shock and turned away at the first gunshot. She viewed the events from a house and a half away and did not possess the same perspective as Jones. See Sudac v. Hoang, 378 F. Supp.2d 1298, 1311 (D. Kan. 2005).

The cases plaintiffs cite are clearly distinguishable. Doc. 50 at 7. For example, in Cooper v. Brown, the officer could see

the suspect's hands; he had no weapon and was actively complying and not resisting the officer's orders. 844 F.3d 517, 522 (5th Cir. 2016). In Deville v. Marcantel, a woman with her grandchild in the car was stopped for a minor traffic violation; she would not leave the child alone in the car so the officer immediately broke out the window and dragged her from the car. 567 F.3d 156, 167 (5th Cir. 2009).

In this case, "[p]laintiffs acknowledge that there is evidence that [Brumley] attempted to stab Officer Jones." Doc. 50 at 8. The summary judgment evidence establishes that Brumley stabbed Jones and that Jones perceived that Brumley posed a threat of serious harm to him. Brumley refused to drop the weapon after being ordered to do so and Brumley continued to assault Jones after the first two shots were fired. Doc. 37 at 3-4. Jones's use of deadly force was objectively reasonable. Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012). Although Jones might have taken another course of action, the court does not use the vision of 20-20 hindsight to judge the reasonableness of his actions. Mace, 333 F.3d at 625.

C.   Claims against City of Fort Worth Must Be Dismissed

Inasmuch as Jones did not use excessive force, there could not have been a constitutional violation by City of Fort Worth. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986);

13

<u>Elizondo v. Green</u>, 671 F.3d 506, 510-11 (5th Cir. 2012).

Therefore, City of Fort Worth is entitled to judgment as a matter

of law. The court is satisfied that no purpose would be served in

giving notice and an opportunity to respond to a proposed

dismissal of the claims against City of Fort Worth. <u>See</u> Fed. R.

Civ. P. 56(f). The claims against it necessarily fail because

there was no constitutional violation by its officer, Jones.

<u>Heller</u>, 475 U.S. at 799. <u>Elizondo</u>, 671 F.3d at 510-11.

V.

<u>Order</u>

For the reasons discussed herein,

The court ORDERS that Jones's motion for summary judgment

be, and is hereby, granted, that plaintiffs take nothing on their

claims against Jones, and that such claims be, and are hereby,

dismissed with prejudice.

The court further ORDERS that plaintiffs take nothing on

their claims against defendant City of Fort Worth and that such

claims be, and are hereby, dismissed with prejudice.

SIGNED December 5, 2017.

JOHN McBRYDE

United States District Judge

14